# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.H.-1, A.T.-V., K.H.-2, and G.S.**

**No. 19-0246** (Wood County 17-JA-261, 17-JA-262, 17-JA-263, and 17-JA-264)

## MEMORANDUM DECISION

Petitioner Mother A.T., by counsel Eric K. Powell, appeals the Circuit Court of Wood County's February 22, 2019, order terminating her parental rights to K.H.-1, A.T.-V., K.H.-2, and G.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Debra L. Steed, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in granting her post-termination visitation at the discretion of the children's great-grandmother.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 14, 2017, the circuit court dismissed an abuse and neglect petition against petitioner after she successfully remedied the conditions of neglect due to her substance abuse. The circuit court's dismissal order provided that the DHHR would continue to monitor petitioner's home and provide services. In September of 2017, while visiting petitioner's home, a Child Protective Services worker observed petitioner to be under the influence of drugs. Petitioner admitted that she used heroin and methamphetamine "a day or so before." The children's great-

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as K.H.-1 and K.H.-2, respectively, throughout this memorandum decision.

[2]Petitioner does not raise any error concerning the termination of her parental rights.

1

grandmother, with whom the children were placed during the prior proceeding, reported that she also suspected that petitioner was using drugs and took the youngest child to her home. The older children refused to come with her. However, all the children were subsequently placed with the great-grandmother under a temporary protection plan.

On September 27, 2017, the DHHR filed the instant abuse and neglect petition alleging that petitioner neglected the children based upon her substance abuse. Petitioner waived her preliminary hearing, and the children continued in the care of the great-grandmother. On November 30, 2017, the circuit court held an adjudicatory hearing. The great-grandmother testified that, because she observed petitioner abuse drugs for nearly ten years, she knew what petitioner looked like and how she acted when she was under the influence of drugs and when she was not. Upon petitioner's admission to neglecting her children as a result of her continued substance abuse, the circuit court found that petitioner "engaged in substance abuse to the extent that her parenting was impaired" and adjudicated petitioner as an abusing parent.

Over the next year, petitioner participated in a post-adjudicatory improvement period and a post-dispositional improvement period. On December 21, 2018, the circuit court held a review hearing which petitioner failed to attend, but was represented by counsel. The DHHR presented evidence that petitioner failed to consistently appear for drug screens. The circuit court found that petitioner failed to comply with the terms and conditions of her post-dispositional improvement period, terminated the improvement period, and set the case for a dispositional hearing.

The circuit court held a final dispositional hearing on January 25, 2019. Following the presentation of testimony, counsel for petitioner requested that the court consider granting petitioner "post-termination visitation at the discretion of the custodian or caretaker of the children and allow her to come back at a later point in time to show the [circuit c]ourt that she can be a fit mom." The guardian then recommended termination of petitioner's parental rights in order to establish permanency for the children. The great-grandmother indicated to the guardian that "she wants to adopt the children and the children have indicated, the older ones, that they want to be adopted so they know they are always going to stay there. At this point they want some firm placement." The circuit court considered less-restrictive dispositional alternatives, but ultimately decided that termination was necessary. In its dispositional order, the court noted that petitioner failed to adequately address her substance abuse issues and drank alcohol, which she admitted that she should not do because of her substance addiction. Further, the circuit court found that the termination of petitioner's parental rights was in the children's best interests and ordered that post-termination visitation be left to the discretion of the great-grandmother. The circuit court terminated petitioner's parental rights in its February 22, 2019, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

_____

[3]The permanency plan for the children is either legal guardianship with the great-grandmother or adoption by the great-grandmother.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

In her sole assignment of error, petitioner argues that the circuit court erred in "vesting in the [great-grandmother] of the children the right to determine whether petitioner will be allowed to have visits with her children." In support of her argument, petitioner contends that her constitutional rights were violated when the circuit court granted her post-termination visitation at the great-grandmother's discretion. What petitioner fails to recognize, however, is that

[a] final order terminating a person's parental rights, as the result of either an involuntary termination or a voluntary relinquishment of parental rights, completely severs the parent-child relationship, and, as a consequence of such order of termination, the law no longer recognizes such person as a "parent" with regard to the child(ren) involved in the particular termination proceeding.

Syl. Pt. 4, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007).

Because petitioner's parental rights were terminated, she no longer has any right, constitutional or otherwise, to parent her children. Accordingly, any argument that the great-grandmother may, in the future, violate petitioner's constitutional rights with regard to her children is without a basis in the law.

Further, our case law explains that post-termination visitation is not for the benefit of the biological parent, but for the children. This Court has stated

[u]ndoubtedly, . . . [the child's] best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life. Clearly, "*these interests are interests of the child and not of the parent.* Visitation is, to be sure, a benefit to the adult who is granted visitation rights with a child. But it is not the adult's benefit about which the courts are concerned. It is the benefit of the child that is vital." "Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship."

*In re K.H.*, 235 W. Va. 254, 263, 773 S.E.2d 20, 29 (2015) (citations omitted) (emphasis added). As discussed further below, it is clear that the circuit court considered the children's best interests when deciding whether to grant petitioner post-termination visitation with the children.

In regard to granting post-termination visitation, we have held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 2, *In re Billy Joe M.,* 206 W. Va. 1, 521 S.E.2d 173 (1999).

Upon our review, the Court finds no error in the circuit court's decision to grant petitioner post-termination visitation at the discretion of the children's great-grandmother. The record shows that petitioner has struggled with a drug addiction for approximately ten years and had two abuse and neglect petitions filed against her due to her addiction. In the instant proceedings, petitioner failed to adequately address her substance abuse issues and admitted to relapsing on drugs and drinking alcohol. However, the circuit court recognized the bond that petitioner had with her children and found that it was in the children's best interest to grant petitioner post-termination visitation at the discretion of the children's great-grandmother. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). The record shows that placement with the great-grandmother is consistent with the children's best interests and that the children wish to be placed with their great-grandmother because they feel safe and secure with her. Further, the circuit court found that the children's great-grandmother had approximately ten years of experience in determining whether petitioner was under the influence of substances. Therefore, the circuit court properly decided that the great-grandmother was in a position to determine whether, on a case by case basis, petitioner was in an appropriate condition to visit the children and would not threaten their welfare with continued substance abuse. In fact, counsel for petitioner suggested such arrangement wherein the great-grandmother would have custody of the children and have discretion regarding post-termination visitation with petitioner.[4] In sum, "nothing in our statutory provisions or case law prevents a circuit court from allowing a custodian to exercise discretion in regard to post-termination visitation." *In re J.P.*, No. 14-0781, 2014 WL 6635073 (W. Va. Nov. 24, 2014)(memorandum decision); *In re S.O.*, No. 16-0937, 2017 WL 1102803 (W. Va. Mar. 24,

---

[4]On appeal, petitioner argues that this statement was taken out of context because counsel was actually requesting a less-restrictive dispositional alternative. However, it is clear from the record that petitioner agreed that the great-grandmother was an appropriate person to entrust with having discretion regarding visitation.

2017)(memorandum decision). Petitioner acknowledges that this Court declined to reverse the action of the lower court to vest discretion in the caretaker of the children in regard to post-termination visitation in *In re J.P.* and *In re S.O.* She contends that these decisions should be overruled. We decline to do so here. As such, we find no error in the circuit court's decision to grant petitioner post-termination visitation with the children at the great-grandmother's discretion.

Lastly, because G.S.'s father's abuse and neglect proceedings are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 22, 2019, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  November 8, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison